Slip Op. 18-148

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TOSÇELIK PROFIL VE SAC ENDÜSTRISI A.Ş., AND TOSYALI DIS TICARET A.Ş., ÇAYIROVA BORU SANAYI VE TICARET A.Ş., AND YÜCEL BORU ITHALAT-IHRACAT VE PAZARLAMA A.Ş., | |
| Plaintiffs, | Before: Leo M. Gordon, Judge |
| v. | Consol. Court No. 15-00339 |
| UNITED STATES, | |
| Defendant. | |

**OPINION AND ORDER**

[Remand Results remanded.]

Dated: October 24, 2018

    David L. Simon, Law Offices of David L. Simon of Washington, DC, argued for Plaintiffs Tosçelik Profil ve Sac Endüstrisi A.Ş., Tosyali Dis Ticaret A.Ş., Çayirova Boru Sanayi ve Ticaret A.Ş., and Yücel Boru Ithalat-Ihracat ve Pazarlama A.Ş.

    Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, U.S. Department of Justice of Washington, DC, for Defendant United States, argued for Defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Claudia Burke, Assistant Director. Of counsel was Saad Y. Chalchal, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

    Gordon, Judge: This action involves the U.S. Department of Commerce

("Commerce") antidumping duty investigation covering welded line pipe from the Republic

of Korea and the Republic of Turkey. See Welded Line Pipe from the Republic of Turkey,

80 Fed. Reg. 61,362 (Dep't of Commerce Oct. 13, 2015) (final determination of sales at

less than fair value) ("Final Determination"); see also Issues and Decision Memorandum for Welded Line Pipe from the Republic of Turkey, A-489-822 (Dep't of Commerce Oct. 13, 2015), available at http://enforcement.trade.gov/frn/summary/turkey/2015-25990-01.pdf (last visited this date) ("Decision Memorandum").

Before the court are the Final Results of Redetermination ("Remand Results"), ECF No. 67-1, filed by Commerce pursuant to Toscelik Profil ve Sac Endustrisi, A.S. v. United States, 41 CIT ___, 256 F. Supp. 3d 1260 (2017), and the comments of Plaintiffs Çayirova Boru Sanayi ve Ticaret A.Ş. and Yücel Boru Ithalat-Ihracat ve Pazarlama A.Ş. (collectively, "Çayirova"), as well as Tosçelik Profil ve Sac Endüstrisi A.Ş. and Tosyali Dis Ticaret A.Ş. (collectively, "Tosçelik"). See Pls.' Comments on Final Result of Redetermination Pursuant to Remand, ECF No. 74 ("Pls.' Cmts."); see also Def.'s Reply to Comments on the Remand Redetermination, ECF No. 77 ("Def.'s Resp."). For the reasons that follow, the court remands this matter to Commerce to recalculate Plaintiffs' duty drawback adjustment.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." <u>DuPont Teijin Films USA v. United States</u>, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., <u>Administrative Law and Practice</u> § 9.24[1] (3d ed. 2018). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A <u>West's Fed. Forms</u>, National Courts § 3.6 (5th ed. 2018). Familiarity with the prior judicial and administrative decisions in this action is presumed.

Separately, the two-step framework provided in <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842–45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. <u>See</u> <u>United States v. Eurodif S.A.</u>, 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

## II. Duty Drawback Framework

Duty drawback is a term of art in international trade that typically refers to a program (in a given country) pursuant to which import duties on merchandise may be

recouped by the subsequent exportation of that merchandise. The antidumping statute specifically addresses duty drawback programs by directing Commerce to increase export price by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B). Commerce applies a two-pronged test for duty drawback adjustments:

> (1) the import duty paid and the rebate payment are directly linked to, and dependent upon, one another (or the exemption from import duties is linked to exportation); and (2) there are sufficient imports of the imported raw material to account for the drawback received upon the exports of the manufactured product.

Antidumping Methodologies: Market Economy Inputs, Expected Non-Market Economy Wages, Duty Drawback, 71 Fed. Reg. 61,716, 61,723 (Dep't of Commerce Oct. 19, 2006) ("Duty Drawback Methodology"); see also Far East Machinery Co. v. United States, 12 CIT 972, 699 F. Supp. 309 (1988).

Turkey has a duty drawback program known as the Inward Processing Regime ("IPR"). See Decision Memorandum at 7; Remand Results at 6. Under the IPR, Turkish companies apply for import duty exemptions through certificates ("DIIBs"). DIIBs detail (1) the quantity of raw materials that a company intends to import under the Turkish IPR without payment of import duties and (2) the quantity of actual exports. See Decision Memorandum at 4; Remand Results at 1.

The IPR satisfies Commerce's two-pronged duty drawback test. See Decision Memorandum at 7 (citing Steel Concrete Reinforcing Bar from Turkey, 79 Fed. Reg.

54,965 (Dep't of Commerce Sept. 15, 2014) (final negative determ.) and <u>Certain Oil Country Tubular Goods from the Republic of Turkey</u>, 79 Fed. Reg. 41,971 (Dep't of Commerce July 18, 2014) (final determ.)). In this action Commerce imposed additional criteria for Plaintiffs' duty drawback adjustment: (1) the claimed DIIBs must have been "closed" during the period of investigation (the "POI limitation"); and (2) the import certificates must have reflected exports to the United States of welded line pipe. <u>See Remand Results</u> at 3.

At issue in this action is the first of those criteria, the POI limitation. The parties agree that a DIIB must have been closed,[1] but disagree about when that closure must have occurred. Commerce, as noted, requires closure during the POI. Plaintiffs argue that Commerce should include DIIBs closed prior to verification. Çayirova submitted two DIIBs to Commerce for use in its drawback adjustment, DIIBs #1650 and #6794. Commerce determined that neither DIIB could be used for Çayirova's drawback adjustment because DIIB #1650 had no U.S. sales in the POI and DIIB #6794 did not close until after the POI. <u>See</u> Pls.' Cmts. at 6; <u>Remand Results</u> at 4. Çayirova only challenges Commerce's refusal to use DIIB #6794 due to the POI limitation. Tosçelik submitted six DIIBs to Commerce for use in its drawback adjustment, DIIBs #2756, #2794, #2795, #3171, #5139, and #5560. Pls.' Cmts. at 23. Commerce determined that only DIIBs #2756 and #2795 were

---

[1] In the investigation Commerce considered a DIIB "closed" after it expired, at which point the DIIB holder could no longer apply any additional imports or exports to the DIIB. <u>See Remand Results</u> at 2 n.4. Subsequent to the investigation, and not relevant here, "Commerce's practice has since evolved, and it now defines a DIIB as closed on the date the DIIB holder applies for closure of the DIIB with the Turkish Government." <u>Id.</u> at 3 n.10.

suitable for use in the drawback adjustment, finding that DIIBs #3171, #5139, and #5560 did not contain exports of subject merchandise to the United States and that DIIB #2794 did not close until after the POI. See id.; Remand Results at 4. Tosçelik only challenges Commerce's refusal to use DIIB #2794 due to the POI limitation. Critically, Commerce collected and verified information on all of the DIIBs submitted by Plaintiffs (regardless of whether the DIIBs closed within the POI or not) for the amount of Plaintiffs' uncollected import duties. See Remand Results at 3.

Commerce, for its part, has struggled to identify a reasoned basis for its POI limitation. In the Final Determination Commerce merely concluded that the POI limitation applied. Final Determination at 11. When Plaintiffs challenged that determination here, Commerce requested a voluntary remand to provide an explanation for the new criterion. See Def.'s Resp. in Opp'n to Pls.' Mot. for J. Upon the Agency R., ECF No. 43 at 14–17. On remand, Commerce tried to explain the POI limitation, but faltered. Commerce thought the POI limitation might thwart potential manipulation of "information reflected on the DIIBs prior to their closure." See Remand Results at 13. Commerce abandoned this "manipulation" rationale, however, because there was no evidence that respondents had manipulated the drawback information. Id. Consequently, in the final Remand Results, Commerce settled upon yet another new rationale for the POI limitation. Id. at 5.

Commerce's newest rationale for the POI limitation is that it reasonably allows Commerce to evaluate respondents' "actual duty liability extinguished… during the POI." Id. at 8. Commerce also contends that the POI limitation helps to make computing respondents' duty drawback "more administrable for Commerce." Id. According to

Commerce: "1) it affords Commerce sufficient time to analyze the data and notify respondents of any deficiencies; 2) it avoids the potential for the double counting of claims in multiple segments; and 3) it provides predictability and transparency in the administration of duty drawback claims." Id. at 13.

### III. Discussion

In the <u>Remand Results</u> Commerce noted that "neither the duty drawback statute nor the legislative history provides guidance on the methodology to be used in determining the amount of these uncollected duties," and, "in the absence of such guidance, Commerce may develop reasonable methodologies to fill gaps in the statute." <u>Remand Results</u> at 7. Here, Commerce was apparently hoping to frame its POI limitation as a <u>Chevron</u> step two issue. Although Congress certainly was not thinking about the Turkish IPR when drafting the duty drawback adjustment provision, Congress did speak clearly when it required Commerce to increase export price by the amount of a respondent's duty drawback. <u>See</u> 19 U.S.C. § 1677a(c)(1)(B). Against that statutory requirement, Commerce and the interested parties did an excellent job in the investigation and remand proceeding working through the complexities of the Turkish IPR. Commerce and Plaintiffs are basically in agreement on most of the challenging issues to account for Plaintiffs' duty drawback adjustment: When does a DIIB close? How does the DIIB information get reflected in Plaintiffs' margin calculation? The only remaining question is the reasonableness of Commerce's POI limitation that excluded some of the verified closed DIIBs. That question is ultimately not a legal issue resolved under the second prong of <u>Chevron</u>, but a substantial evidence issue in which the court evaluates the

reasonableness of Commerce's POI limitation given the administrative record. As explained above, Commerce's POI limitation has always been a result in search of a rationale, and in the Remand Results, Commerce failed to identify a reasonable explanation supported by the record.

Commerce tried to justify the POI limitation by equating a respondent's import duty liability with a standard "cost or expense" that goes into a respondent's overall Cost of Production ("COP") for producing subject merchandise:

> Given that the transactions at issues [sic] here relate to duties on imported raw materials, and that raw materials are among costs included in COP, we find that limiting the duty drawback of those duties to amounts earned during the POI to be particularly appropriate.

Remand Results at 10–11. Commerce concluded that because respondents' import duty liabilities during the POI are similar to costs, Commerce's "general practice of examining costs and expenses during the POI" justifies the adoption of the POI limitation in this matter. Id. at 12.

Plaintiffs persuasively counter that Commerce's explanation is unreasonable given the operation of the Turkish drawback program, and Commerce's own treatment of various other margin adjustments. Plaintiffs explain that the respondents' imports of raw materials consumed in the POI "may, or may not, have been imported under one of the DIIBs used – or opened, or closed – in the POI," and that there "is literally no linkage between DIIB usage and cost accounting, particularly since the duties foregone do not show up in the respondent's accounting system at all." Pls.' Cmts. at 11. Plaintiffs also explain that Commerce's claimed "'general practice' has so many exceptions that it is

more a starting point than an actual practice." Id. at 8. For instance, "[f]or annual rebates, Commerce relies on rebate ratios of the most recently completed rebate period, even if that is entirely or partially in the year before the reporting period." Id. Plaintiffs note that Commerce's claim that its analysis of COP data is limited to the POI is also not quite accurate. "In the cost of production, Commerce uses ratios for general and administrative expenses and interest expense from whatever full fiscal year closed in the period of review." Id. Through these examples (and Plaintiffs' overall persuasive command of the antidumping calculation), Plaintiffs demonstrate that Commerce's treatment of costs and expenses tends to depend on the nature of the expense, rather than a consistent, imagined adherence to calculating all costs solely that occur and are accounted for in the POI. And here, Plaintiffs' duty drawback is "not recorded in a company's books." Pls.' Cmts. at 12.

Understanding that its primary justification was inadequate alone, Commerce provided a "secondary" rationale for the POI limitation, contending that it helped to make computing respondents' duty drawback "more administrable for Commerce." Remand Results at 8. According to Commerce: "1) it affords Commerce sufficient time to analyze the data and notify respondents of any deficiencies; 2) it avoids the potential for the double counting of claims in multiple segments; and 3) it provides predictability and transparency in the administration of duty drawback claims." Id. at 13.

Regarding the need for time to confirm the accuracy of data, Commerce reasoned that it would be "impracticable for Commerce to rely on information concerning DIIBs closed after the POI" because "Commerce must review numerous spreadsheets,

duplicate and confirm calculations set forth by the respondents and confirm calculations set forth by respondents and analyze them for errors, and conduct a new analysis to determine whether the revised data meet Commerce's two-prong test." Id. at 17. Although Commerce poses an interesting hypothetical of impracticability, there was no impracticability here because Commerce verified the usage and closure of the DIIBs on the record, including those that closed after the POI, and all of which included exports to the United States made during the POI. See Pls.' Cmts. at 6, 13, 23. Commerce's stated concerns about the timeliness of drawback data submissions do not apply to this administrative record. This action simply does not involve untimely information or a failure to honor statutory and regulatory time limits. See id. at 16. And Commerce's verification of all the closed DIIBs belies its arguments that it would be impracticable to do so. Commerce did it.

Commerce's next reason about possible double-counting lacks merit. Commerce felt that without the POI limitation Commerce would need a DIIB tracking system "to prevent counting the same DIIB in multiple segments of a particular proceeding." Remand Results at 18. Commerce's double-counting rationale fails because a DIIB simply cannot be double-counted from one segment to the next. Pls.' Cmts. at 15. The duty drawback ratio is not exhausted by its having been reported in a given segment of a proceeding. Id. at 13. Two exports that are in different administrative review periods that occur on the same DIIB are entitled to the same adjustment. Id.

And although Commerce hopes that, "the acceptance of DIIBs closed as of particular date . . . lends additional transparency and predictability to the administration

of the antidumping law," <u>Remand Results</u> at 18, Plaintiffs persuasively counter that there is no "element of predictability or transparency served by denying a drawback adjustment that has been verified and the accuracy of which is not in question." Pls.' Cmts. at 15. The court agrees with Plaintiffs. Commerce's imposition of the POI limitation in this matter unreasonably undercuts its stated goals of accuracy, transparency, and predictability by ignoring verified record information. The one reasonable thing to do here is calculate Plaintiffs' duty drawback adjustments consistent with that verified information.

### IV. Conclusion

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce shall calculate the drawback ratio using the verified information on the record, incorporating DIIB #6794 for the calculation of Çayirova's drawback adjustment, and DIIB #2794 for the calculation of Tosçelik's drawback adjustment; and it is further

**ORDERED** that Commerce shall file its remand results on or before December 7, 2018; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page/word limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

                                                            /s/ Leo M. Gordon
                                                          Judge Leo M. Gordon

Dated: October 24, 2018
           New York, New York